IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

STEVEN L. CUCCINELLO a/k/a :
STEVEN L. CUCCINELLO, SR., and   :
STEVEN L. CUCCINELLO, JR.;   :
                                                      :
             Plaintiffs,   :   CIVIL ACTION FILE
v.   :
                                                     :   NO.
                                                     :
EQUIFAX INFORMATION   :
SERVICES, LLC,   :   **JURY TRIAL DEMANDED**
                                                     :
         Defendant.   :
_____ :

## COMPLAINT FOR DAMAGES

### INTRODUCTION

1.    Plaintiffs STEVEN L. CUCCINELLO a/k/a STEVEN L. CUCCINELLO, SR., and  STEVEN L. CUCCINELLO, JR. (collectively referred to as "Plaintiffs") bring this action for damages against Equifax Information Services, Inc. ("EQUIFAX") pursuant to the Federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* (hereinafter "FCRA").

2.    Plaintiffs are father and son who share the same name: Steven Cuccinello.

3.      Both are the victims of inaccurate, mixed and merged EQUIFAX credit files

        as a result of Equifax's improper combining of their personal information.

        Such information includes the crossing of their social security numbers and

        various other account and personal information.

4.      The errors with Plaintiffs' credit files are unique to Equifax, and to the best

        of Plaintiffs' knowledge, no other credit reporting agency, including but not

        limited to Trans Union or Experian, has mixed the Plaintiffs' credit

        information.

5.       Despite repeated attempts to contact EQUIFAX both by phone and mail,

        Equifax has continually failed to correct the erroneous information on

        Plaintiffs' credit reports.

## SUBJECT MATTER JURISDICTION

6.      Subject matter jurisdiction in this Court is proper pursuant to 15 U.S.C. §

        1681p.

7.      Venue lies properly in this district pursuant to 28 U.S.C. §1391(b).

## PARTIES AND PERSONAL JURISDICTION

2

8.    Both Plaintiffs are residents of this State, District and Division and are both

consumers as defined by the FCRA, 15 U.S.C. § 1681a(c).

9.    EQUIFAX is a Georgia Corporation that regularly conducts substantial

business in the State of Georgia and which has its principal place of business

located at 1550 Peachtree Street, NW, H46, Atlanta, GA  30309-2402, USA.

10.   EQUIFAX may be served by personal service upon its current registered

agent in the State of Georgia, to wit: Lisa Stockard, 1550 Peachtree Street,

NW, Atlanta, GA  30309.

## FACTUAL ALLEGATIONS

11.   EQUIFAX is a consumer reporting agency as defined by the FCRA, 15

U.S.C. § 1681a(f).

12.   The FCRA requires consumer reporting agencies such as EQUIFAX, in

preparing a credit report, to "follow reasonable procedures to assure

maximum possible accuracy of the information" in the report.  15 U.S.C. §

1681e(b).

13.   The FCRA requires that consumer reporting agencies ("CRAs") such as

EQUIFAX conduct a reasonable reinvestigation of any information that is

disputed by a consumer to determine if the information is accurate.

14.   CRAs must notify the source of the information of the dispute within five

     days.

15.   CRAs must provide the source with all relevant information received from

     the consumer.

16.   CRAs must review and consider all relevant information provided by the

     consumer in conducting the reinvestigation.

17.   CRAs must delete or modify information that is found to be inaccurate or

     incomplete, or that which cannot be verified.

18.   CRAs must complete the reinvestigation within 30 days, or within 45 days if

     the dispute is based on a free annual credit report.

19.   CRAs must send a consumer written results of the reinvestigation and a

     credit report that is based on the consumer's file as that file is revised as a

     result of the reinvestigation. 15 U.S.C. § 1681i(a).

20.   The FCRA provides that CRAs may only furnish a credit report to a person

     "which it has reason to believe … intends to use the information in

     connection with a credit transaction involving the consumer on whom the

     information is to be furnished." 15 U.S.C. § 1681b(a).

21.    The policies and procedures of EQUIFAX do not ensure compliance with some or all of these provisions of the FCRA.

22.    The sale of consumers' most sensitive personal and financial information is a highly profitable multi-billion-dollar industry for the CRAs.

23.    A major problem in the credit reporting industry is the mixed file. A mixed file occurs when one consumer's information is deleted from his or her credit file and placed on the credit file of another consumer.

24.    EQUIFAX's procedures for matching consumer information, which require less than an exact match of information to a consumer file, are the primary cause of the mixing of one consumer's file with another.

25.    Mixed files create a false description of a consumer's credit history.

26.    Mixed files also result in the disclosure of a consumer's confidential financial and personal information to persons who should not receive it.

27.    In addition to having their confidential personal and financial  information wrongly inserted into the credit file of another consumer, mixed file victims are often plagued with significant adverse collection activity due to the inaccurate credit reporting; this results in the consumer being unable to obtain credit at a favorable rate (if at all).

28. Mixed file victims often spend significant time, effort, and resources trying to correct the erroneous mixed information.

29. Mixed files are not a new phenomenon. The CRAs have known about mixed files for over 30 years. *See Thompson v. San Antonio Retail Merchants Ass'n,* 682 F.2d 509 (5th Cir. 1982).

30. Mixed files occur despite consumers' having unique personal identifying information, such as Social Security numbers. The CRAs' matching logic allows information to be included in a consumer's file even when the Social Security number reported with the information is different than the Social Security number on the consumer's file.

31. EQUIFAX knows its matching procedures do not require exact matches and their procedures have frequently caused inaccurate credit reports and mixed files in hundreds of cases.

32. In the 1990's, the Federal Trade Commission ("FTC") filed a lawsuit against Equifax, Trans Union, and Experian's predecessor TRW because of their failure to comply with various mandates of the FCRA, including the mixing of consumers' files.

33. In the 1990's, the Attorneys General of a number of states also filed a lawsuit against Equifax, Trans Union and Experian's predecessor TRW because of their failure to comply with the FCRA, including the mixing of consumers' files.

34. In 1995, EQUIFAX signed a Consent Order with the FTC in which it agreed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the consumer about whom the consumer report relates; it specifically included following reasonable procedures to avoid the occurrence of mixed files, including, but not limited to, mixing of files as the result of entry of data by subscribers when seeking consumer reports.

35. The CRAs continue to repeatedly mix consumers' files despite their agreements with the FTC and State Attorneys General and hundreds of lawsuits filed against the CRAs by consumers whose files have been mixed.

36. Specifically, EQUIFAX agreed to use, for matching and identification purposes, at least two of four criteria, which included a consumer's name, social security number, date of birth or furnisher account number.

37.    There is information in each of Plaintiffs' credit files with EQUIFAX that

        does not match at least two of the four criteria EQUIFAX had consented to

        match.

38.    Over the last ten years, EQUIFAX has been sued hundreds of times by

        consumers whose files were mixed with a different consumer.

39.    Despite federal law, congressional mandates, federal and state government

        enforcement actions, and hundreds of consumer lawsuits, mixed files

        continue to remain a significant source of credit reporting errors for CRAs

        like EQUIFAX and which result in major credit problems for consumers,

        including each of the Plaintiffs.


## FACTS OF PLAINTIFF'S MIXED CREDIT FILE WITH DEFENDANT
## EQUIFAX

40.    In April of 2020, Steven L. Cuccinello, Jr. (hereinafter individually referred

        to as "JUNIOR") requested a copy of his credit file from Equifax.

41.     Equifax's online portal returned an error message and JUNIOR was unable

        to obtain his report.

42.    JUNIOR called and spoke to an EQUIFAX customer service representative and was advised the reason for the error was that they could not find his credit file, so the agent requested he provide additional information to EQUIFAX before they would provide JUNIOR with a copy of his credit file.

43.    JUNIOR mailed EQUIFAX the information its customer service representative requested, including a copy of his Georgia Drivers License and his social security card.

44.    EQUIFAX did not send JUNIOR a copy of his credit file that had been requested despite being provided with the additional information they requested.

45.    On May 16, 2020, Steven L. Cucciniello (hereinafter individually referred to as "SENIOR") received three separate letters from EQUIFAX dated March 10, 2020.

46.    The first letter was notice of the placement of a security freeze on SENIOR'S credit file.

47.    SENIOR had not requested a security freeze on his EQUIFAX credit file.

48.    The second letter was notice that the security freeze on SENIOR'S credit file had been permanently deleted.

49.   SENIOR had also not requested a deletion of a security freeze on his

EQUIFAX credit file.

50.   SENIOR was confused by the two security freeze letters he received from

EQUIFAX and became concerned that there was an issue with his account.

51.   SENIOR then received a third letter from EQUIFAX which contained an

unsolicited copy of his credit report dated May 16, 2020. SENIOR was

shocked to learn that his file had erroneously been linked to the social

security number of his son, who shares the same name, but has the

generational designation of "jr.".

52.   The mixed credit report and attribution of his excellent credit history

accumulated over approximately 25 years of credit into his 21-year old son's

file alarmed SENIOR.

53.   On May 16, 2020, the same day SENIOR received his unsolicited copy of

his EQUIFAX credit file, he contacted EQUIFAX by telephone to report the

erroneous information.

54.   SENIOR spoke to a customer service agent and reported his son's social

security number had been added to his file in place of his own.

55.  The EQUIFAX agent that SENIOR spoke with advised him that there was

no file in their records that was attached or affiliated to SENIOR'S correct

social security number.

56.  SENIOR was alarmed by EQUIFAX agent's revelation to him that his file

essentially no longer existed, and FATHER was insistent with the agent that

this needed to be corrected immediately.

57.  The EQUIFAX agent advised SENIOR that he was unable fix the error with

the information he had and asked SENIOR to send a letter to EQUIFAX

explaining the problem along with a copy of his Georgia Driver's License

and Social Security card.

58.  On May 16, 2020, SENIOR sent a written notice to EQUIFAX requesting

that his son's social security number be removed and that his correct social

ending in 5761 be reinserted.

59.  SENIOR also requested a copy of the corrected file.

60.  EQUIFAX did not respond to this letter or correct his credit report.

61.  On June 19, 2020, more than a month after SENIOR had mailed his dispute

letter to EQUIFAX, SENIOR again called EQUIFAX.

62.    The EQUIFAX agent that SENIOR spoke with advised that there was not a
       file attached to his name and requested that he send another letter addressing
       the problem.

63.    On the same day, June 19, 2020, SENIOR sent a second dispute letter to
       EQUIFAX that was similar to the first letter and again requested that his
       son's Social Security number be removed from his file and that his correct
       Social Security number ending in 5761 be reinserted. SENIOR also included
       an additional copy of his Georgia Driver's License and Social Security card.

64.    SENIOR also made a similar request for a copy of the corrected credit file.

65.    EQUIFAX did not respond to SENIOR'S second letter with either an
       explanation or a corrected credit report.

66.    On August 6, 2020, SENIOR sent EQUIFAX a third dispute letter after
       trying in vain on at least three occasions to contact a representative.

67.    SENIOR'S third letter requests correction of the mixed file for both himself
       and his son.

68.    SENIOR'S third letter includes both the Social Security card and Georgia
       driver's license of both SENIOR and JUNIOR, as well as prior

correspondences and a copy of the erroneous report with the inaccurate

information highlighted.

69.   SENIOR'S third request also requested that EQUIFAX send a corrected copy

of both his and JUNIOR'S credit reports to them.

70.   SENIOR received a response from EQUIFAX following his third written

dispute in a letter dated August 11, 2020, which in relevant part stated that

they were unable to locate a credit file on him because either he did not have

a credit file, he had not applied for credit recently, or he had not actively

used credit  in the past ten years.

71.   None of the reasons provided by EQUIFAX for him not having a credit file

were valid as he had always had a credit file until the mixing, had applied

for credit, and had actively used credit during past ten years.

72.   SENIOR did not receive a credit file for either himself or JUNIOR as was

requested in his August 6, 2020 dispute letter.

73.   On August 24, 2020, SENIOR sent EQUIFAX a fourth dispute letter

requesting correction and containing his three prior letters and attachments.

74.   SENIOR received a response from EQUIFAX to his fourth dispute letter in a

written correspondence dated August 31, 2020, which was virtually identical

in form and content to the one he received from EQUIFAX on August 11, 2020.

75.   SENIOR did not receive a credit file for either himself or for JUNIOR after his August 24, 2020 dispute letter.

76.   As of the filing of this Complaint, neither SENIOR nor JUNIOR have received any further correspondence from EQUIFAX addressing their dispute over the erroneous mixed files.

77.   As of the filing of this Complaint, the mixed files of SENIOR and JUNIOR have not been corrected—even after two phone calls four detailed written dispute letters.

78.   EQUIFAX did not conduct reasonable reinvestigations of each of Plaintiffs' six disputes or otherwise comply with the requirements of 15 U.S.C. §1681i.

79.   EQUIFAX, in addition to mixing both plaintiffs' information, actually merged both of their files into a single file containing JUNIOR's Social Security number and the rest of the information of FATHER.

80.   EQUIFAX furnished the mixed file of the Plaintiffs for use in transactions that did not involve both of them, in violation of 15 U.S.C. §1681b.

81.   Both Plaintiffs are concerned with straightening out their credit files at

EQUIFAX, and they have each been forced to spend significant amounts of

personal time trying to correct their mixed and merged credit files with

EQUIFAX.

## FIRST CLAIM FOR RELIEF

(Negligent Noncompliance with FCRA)

82.   Plaintiffs realleges and incorporates paragraphs 1 through  81.

83.   EQUIFAX negligently failed to comply with the requirements of the FCRA,

including but not limited to, failing to comply with 15 U.S.C. §§1681b, e, g

and i.

84.   EQUIFAX is liable to the Plaintiffs for negligently providing the mixed

credit report of each of the Plaintiffs to each other's creditors, in violation of

15 U.S.C. § 1681b(a) and (c).

85.    EQUIFAX is liable to the Plaintiffs for negligently failing to employ and

follow reasonable procedures to assure maximum possible accuracy of

Plaintiffs' credit reports, information and files, in violation of 15 U.S.C. §

1681e(b).

86.    EQUIFAX is liable to each of the Plaintiffs for negligently failing to provide

       them with a true and complete copies of each of their credit files in violation

       of 15 U.S.C. § 1681g.

87.    EQUIFAX is liable to the Plaintiffs for negligently failing to comply with

       the requirements imposed on a consumer reporting agency of disputed

       information pursuant to 15 U.S.C. § 1681i.

88.    As a result of EQUIFAX's failure to comply with the requirements of the

       FCRA, Plaintiffs each have suffered and continue to suffer, actual damages,

       including economic loss, denial of credit, lost opportunity to receive credit,

       damage to reputation, invasion of privacy, emotional distress, frustration,

       anxiety, embarrassment, humiliation and significant interference with their

       normal and usual activities for which they each seek damages in an amount

       to be determined by the jury.

89.    SENIOR has been denied a credit card and an auto loan as a direct result of

       this mixed file.

90.    Plaintiffs each request attorney fees pursuant to 15 U.S.C. § 1681o(a).

## **SECOND CLAIM FOR RELIEF**

(Willful Noncompliance with FCRA)

91.   Plaintiff realleges and incorporates paragraphs 1 through 81.

92.   EQUIFAX willfully failed to comply with the requirements of the FCRA, including but not limited to, failing to comply with 15 U.S.C. §§1681b, e, g and i.

93.   EQUIFAX is liable to the Plaintiffs for willfully providing the mixed credit report of each of the Plaintiffs to each other's creditors, in violation of 15 U.S.C. § 1681b(a) and (c).

94.    EQUIFAX is liable to the Plaintiff for willfully failing to employ and follow reasonable procedures to assure maximum possible accuracy of each of the Plaintiffs' credit reports, information and files, in violation of 15 U.S.C. § 1681e(b).

95.   EQUIFAX is liable to the Plaintiffs for willfully failing to provide Plaintiffs with a true and complete copy of each of their credit files in violation of 15 U.S.C. § 1681g.

96.   EQUIFAX is liable to the Plaintiffs for willfully failing to comply with the

requirements imposed on a consumer reporting agency of disputed

information pursuant to 15 U.S.C. § 1681i.

97.   As a result of EQUIFAX's willful failure to comply with the requirements of

the FCRA, Plaintiffs have each suffered and continues to suffer, actual

damages, including economic loss, denial of credit, lost opportunity to

receive credit, damage to reputation, invasion of privacy, emotional distress,

frustration, anxiety, embarrassment, humiliation and significant interference

with their normal and usual activities for which they each seek damages in

an amount to be determined by the jury.

98.   At all times pertinent hereto, the conduct of the EQUIFAX, as well as that of

its agents, servants and/or employees, was intentional, willful, reckless, and

in grossly negligent disregard for federal law and the rights of the Plaintiffs

herein.

99.   As a result, Plaintiffs each seeks punitive damages in an amount to be

determined by the jury because the

100.  Plaintiffs each request attorney fees pursuant to 15 U.S.C. § 1681n(a).

## JURY TRIAL DEMAND

101.    Plaintiffs demand a jury trial on all claims.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment against defendant as follows:

On the First Claim for Relief:

1. Actual damages to be determined by the jury; and

2. Attorney fees.

On the Second Claim for Relief:

1. Actual damages to be determined by the jury;

2. Punitive damages to be determined by the jury; and

3. Attorney fees.

On All Claims for Relief:

1. Costs and expenses incurred in the action.

2. An Order directing Defendant to provided Plaintiffs with a corrected copy of each Plaintiffs' credit files to include all of their accurate credit history; and

3. Such other and further relief as may be necessary, just and proper.

DATED this 19th day of October 2020.

19

Respectfully submitted,

**SKAAR & FEAGLE, LLP**

by:    <u>s/ James M. Feagle</u>
       James M. Feagle
       Georgia Bar No. 256916
       jfeagle@skaarandfeagle.com
       Cliff R. Dorsen
       Georgia Bar No. 149254
       cdorsen@skaarandfeagle.com
       2374 Main Street
       Suite B
       Tucker, GA 30084
       404 / 373-1970
       404 / 601-1855 fax

       Kris Skaar
       Georgia Bar No. 649610
       kskaar@skaarandfeagle.com
       Justin T. Holcombe
       Georgia Bar No. 552100
       jholcombe@skaarandfeagle.com
       133 Mirramont Lake Drive
       Woodstock, GA  30189
       770 / 427-5600
       404 / 601-1855 fax